## Janicki v. Oates

*Ronald Janicki,* pro se.
*Timothy Wojten,* for defendant.

FRIEDMAN, *J.,* July 10, 2008—This decision is filed pursuant to Pa.R.C.P. 1038. See also, Pa.R.C.P. 227.1(c) (2).

The captioned matter consists of two cases which were consolidated by order of the Honorable R. Stanton Wettick Jr. of this court, dated November 9, 2007. During the trial the Janickis were referred to as plaintiffs and Mr. Oates was considered the defendant. Mr. Oates' claim, filed at AR 07-5484, was generally referred to as a counterclaim.[1]

The dispute involves the construction of an addition to the residence of the Janickis. According to the Jan-

---

1. We also note that the docket numbers are confusingly similar and have led to a variety of typographical errors that seem almost inevitable. The case filed by the Janickis is AR 07-5448.

ickis, Mr. Oates orally agreed to do two separate aspects of the addition: he was to dig a trench for the footers, to pour the footers, and lay five courses of cement block for the foundation, and, after the framing was completed, Mr. Oates was to install stone facing to cover the cement block so that the exterior of the addition would match the existing house.

The Janickis chose not to have an architect (or anyone else) draw up any plans or specs for their project. As a result, no one who worked on the job, nor indeed the Janickis themselves, knew prior to the start of the work exactly what would be involved and what decisions had to be made. Mr. Oates' work was not adequately defined at the beginning of the work nor was its scope ever set down in a writing of any sort.

When the foundation was done, including an extra which we will discuss later, Mr. and Mrs. Janicki decided they should have a writing regarding the future stone work, which was to be done after the rest of the addition was framed in. They composed a statement on the back of an envelope, the original of which was available at trial and viewed by the court. A copy of the envelope (envelope agreement) is in evidence as plaintiffs' exhibit 31. It is fully quoted below:

"As per our agreement, I, Oates, promise to install exterior stone on Ron Janicki's addition for the total sum of $3,500 when addition is completed. Includes material and labor.

"November 21, 2005."

## THE STONE FACING

We will first discuss the envelope agreement, which never was performed by either party. Mr. Oates acknowledged that he signed it, although the location of the signature is not at the end of the writing. The dispute about this exhibit is over its meaning, in particular, the meaning of the word "materials." That crucial word is ambiguous in the circumstances of this case. The Janickis at trial contended that it included the cost of the stone. Mr. Oates says it reflects what he would charge for the mortar, sand, and labor to install the stone facing.

Mr. Oates is credible on this point based on the other circumstantial evidence which shows, inter alia, that at the time the envelope agreement was signed, no one knew how much new stone would be needed. This was because the Janickis wanted to salvage and re-use as much stone as possible from the demolition of a portion of the existing structure. Although the demolition appears to have been done before the envelope agreement was executed, there was no evidence adduced about the actual quantity of salvageable stone. In addition, the amount of stone overall would depend on the number of windows, gables, and other openings in the addition, none of which had been determined at the pertinent times. The most that would have been known to Mr. Oates when he signed the envelope agreement is the rough maximum square footage of the exterior walls of an addition that might be roughly the same height as the house.[2]

---

2. The court does not recall ever seeing a photo of the finished addition, so we do not know what its final appearance was.

The Janickis eventually purchased stone themselves after Mr. Oates refused to include the stone in the price he had given for installation, and another person, Lawrence O. Craig Jr., installed it. The cost of that stone was $2,140. See Prada testimony and plaintiffs' exhibit 35. The cost for installation by Mr. Oates that the Janickis say was to include the cost of stone was only $3,500. The Janickis drafted the envelope agreement and failed to define what they thought "materials" was to include. They also failed to include words such as "provide and install," which would have clarified what they expected of Mr. Oates.

The court believes Mr. Oates at the time considered "materials" to be the things that he needed for the installation he had agreed to do, *i.e.,* mortar and sand. He described his policy never to allow anyone else to provide the sand needed, because when this sort of thing did occur, the wrong kind of sand was usually supplied. The court believes that, at the time, Mr. Oates reasonably understood "materials" to refer only to the mortar and sand. The court therefore concludes that the envelope agreement did not require him to *provide* the stone itself. There was no meeting of the minds on that point; at most there was a mutual mistake.

We now turn to the contract that was performed, the foundation work. Mr. Oates says he did all he was supposed to do and did it in a workmanlike manner. The Janickis admit they paid him in full for all he demanded for that work. However, the Janickis say they later learned, after the framing had been done and another mason, Mr. Craig, had been hired to do the stone work,

that Mr. Oates' work was not done properly. They claim he did not leave enough of a ledge to receive the stone facing. They claim he left some joints open, without mortar and that he even left out parts of block. They claim one corner of the foundation was neither square nor plumb. They claim that Mr. Craig had to make various adjustments to the normal way of installing facing in order to deal with the problems that Mr. Oates created (and that he presumably would have to have corrected had he fulfilled his agreement to install the stone facing). As a result they say they had to pay more to Mr. Craig than Mr. Oates' contract price and they also had to pay for the stone themselves, again instead of Mr. Oates supplying it for the price in the envelope agreement.

The court finds that Mr. Oates' work was properly done in a workmanlike manner, that there was an adequate ledge left to receive the stone *that the Janickis actually purchased,* and that it was more probable than not that the framing, not the foundation, was out of plumb and not correctly set on the foundation wall. The supposed deficiencies in his work were not at all material to workmanlike quality and were at most merely cosmetic in nature, assuming anyone wished to crawl under the addition to gaze at the block walls. The supposedly missing block was more probably than not intentionally left out or cut out to accommodate the plumbing for a bathroom the Janickis had decided to include in the addition after the foundation was completed (more about this later, as it led to a dispute about an extra). In any case, the defects proven were minor,

easily and cheaply correctable, and were not a material breach by Mr. Oates.

The empty joints were vertical ones (called "head" joints) and were not structural in nature; in fact, the credible evidence was that the stone facing would have cured the only harm that might result, an opening for insects and small animals to enter the crawl space. The horizontal joints (called "bed" joints) were structural and were all in place. The credible evidence further showed that the time needed to fill the horizontal joints was minimal and that, had the Janickis demanded they be filled before they paid Mr. Oates, he would have caused them to be corrected.

There was also a contention by the Janickis that the exterior base of a part of the foundation was not made to receive stone at all. However, the credible evidence on this point is that Mr. Janicki at the time had indicated that soil would be placed "to grade" along that area (above a sidewalk which was to be replaced by the Janickis after the addition was done, near some exterior stairs). There would therefore be no stone facing installed there merely to have it covered with dirt. See the testimony of Mr. Edward L. Wood who was the foreman on the job, July 3, 2008, videotape time 9:49-11. Rather than placing soil to grade, the Janickis decided to place a planter in that area to conceal the lack of stone facing. The planter has no footer and is more probably than not temporary in nature, awaiting the replacement of the sidewalk and other landscaping.

The photographs of the supposedly defective corner of the foundation show only the condition *after* Mr.

Craig had chosen to partially demolish it. He also core-filled the entire foundation, using cement and rebar, supposedly to strengthen it. Certainly the demolition he did required that the corner be strengthened, but the credible evidence shows that a block foundation of only five courses does not need rebar to be structurally sound nor did the Janickis require that to be done as part of the foundation contract.

The issue then is whether Mr. Oates' far corner of the foundation was out of plumb and out of square. The available evidence does not show anything that looks out of square. The photographs that show the shallower top blocks that create the ledge indicate that the blocks are equally indented over the deeper lower blocks. The interior photos do not show anything that is not flush. There was one photo that was said to show a block that was sticking out a little bit and was not flush, but the angle was odd, and it did not, in any case, seem indicative of the kind of problem with the depth of the ledge that Mr. Craig said he encountered after the framing was done. There was also no credible evidence (and virtually no evidence at all) to show that the *foundation* was out of plumb.

The court finds that the reason Mr. Craig found the ledge to be too shallow was that he (and the Janickis) were trying to use the salvaged stone, which was much thicker than the new stone. From the available evidence, it appears that the only salvaged stone came from the doorway that was broken out from the original residence to provide entry into the addition. The credible evidence shows that the original stone on the existing structure,

as Mr. Craig credibly pointed out, was roughly two inches deeper than the new stone. It would therefore require a deeper ledge. However, this greater depth was unknown to the Janickis and to Mr. Oates at the time they entered into the oral foundation agreement.

It also does not appear that a large amount of "old" stone would have been available, even if it were all salvageable. The more reasonable approach for the Janickis to have taken would have been to give up the idea of saving a relatively small amount of money on the stone and to use all new stone for the addition. This is especially so since the new stone was not even the same type as the existing stone, although we assume that it was a satisfactory match, appearance-wise.

We find that the credible evidence shows that Mr. Oates built the foundation without any material defects, that the wall could have and did receive the new stone and that any defect with the far corner was not shown by the evidence to be caused by the foundation being out of plumb or out of square.

## EXTRA COST FOR THE FOUNDATION WORK

We now turn to the additional charge, which the Janickis accepted and paid for, at the time in question. This was the $500 for cleaning out the debris originally left in the crawl space that had to be removed when the Janickis decided to add a bathroom to the addition. They did not make this decision until after the foundation walls had been built. Debris, which otherwise could properly have stayed under the addition, had to be removed later to allow the plumbing to be installed.

Whatever the circumstance of this additional work, it was done at the Janickis' request, was not part of the original foundation agreement, and the parties agreed to the price of $500, which was paid by the Janickis and accepted by Mr. Oates.

## MISCELLANEOUS FACTUAL FINDINGS

The Janickis also claim that Mr. Oates is responsible for some items of damage to their property:

"Cracks in a portion of the sidewalk by the addition.

"Stains, ridges, and valleys on two large pads of their driveway.

"Electrical wire that had to be dug out and replaced."

The court finds none of these claims are supported by a preponderance of the credible evidence. As to the sidewalk, it was the only access to the area where the addition was to go. The court believes that the Janickis intended to replace it once the addition was finished. The court also believes the evidence that Mr. Janicki told Mr. Oates or the workers that there was no problem going over the sidewalk with the necessary heavy equipment because the Janickis intended to replace it when the addition was finished.

As for the driveway, the photographic evidence of damage indicates some staining, but there is insufficient credible evidence to support the contention that Mr. Oates (or his agents or sub-contractors) is responsible for it. The credible evidence is not sufficient to lead the

court to conclude it is concrete from the footers, as the Janickis' witnesses have conjectured. Similarly, with regard to cracks, the court could only speculate about when and how they occurred.

Lastly, the scant evidence regarding the electrical wire (a bill) indicates it shorted out because of a bad splice. Mr. Oates did no electrical work whatsoever and the court finds no evidence that he caused any existing wiring to be damaged. The credible evidence is to the contrary; we must recall that the Janickis paid him in full for all the digging work without any mention that an existing underground wire had been damaged while that equipment was being used.

## CONCLUSIONS OF LAW

The court concludes that the extra work was performed and paid for and will not factor into any awards for either party any actual costs related to that relatively minor issue.

The court further concludes that both parties fully performed the foundation agreement. Mr. Oates did the work that the Janickis expected with regard to the foundation and the Janickis paid Mr. Oates for that performance, thereby completing their own performance under the foundation agreement.

As to the envelope agreement regarding the future stone work, the court finds that the Janickis drafted a writing that was ambiguous and that the court construes, based on the credible evidence, as not including the price of the stone. The court concludes that Mr. Oates was therefore justified in refusing to pay for the stone

as part of his performance of the envelope agreement. He was also justified in refusing to start the work without that aspect of the envelope agreement being resolved.

In summary, the court concludes that the Janickis are entitled to nothing on their claim and Mr. Oates is entitled to nothing on his counterclaim.

Pursuant to the rules of court cited above, this decision constitutes the verdict of this court; there will be no separate verdict slip filed.